# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DIMITRI ZAIMES,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:09-01964** |
| | : | |
| **v.** | : | |
| | : | **(JUDGE MANNION)**[1] |
| **JEFFREY CAMMERINO,** | | |
| **R. ANTHONY WALDRON III,** | : | |
| **TODD J KLIKUS, RICHARD** | | |
| **KROTCHA, FRED** | : | |
| **GELDERMAN, BRIAN I** | | |
| **STUART, RICHARD B.** | : | |
| **TUSSELL, LACKAWAXEN** | | |
| **TOWNSHIP,** | : | |
| | | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court is a motion for summary judgment filed on behalf of defendants Jeffrey Cammerino, Todd J. Klikus, Richard Krotcha, Fred Gelderman, Brian I. Stuart, Richard B. Tussell, and Lackawaxen Township, (Doc. No. 24), and a motion for summary judgment on behalf of defendant R. Anthony Waldron III, (Doc. No. 33). In light of the same basic fact pattern and allegations against all the defendants, the court will analyze the motions in one Memorandum and Order. Based upon the court's review of the motions and the materials related thereto, the motions for summary judgment will be **GRANTED**.

---

[1]The instant action was originally assigned to the Honorable A. Richard Caputo. Pursuant to the verbal order dated January 4, 2013, the matter was reassigned to the undersigned.

## I. PROCEDURAL HISTORY

On October 10, 2009, plaintiff filed his Complaint in which he generally alleges Constitutional violations under the Fourth, Fifth, and Fourteenth Amendments for the alleged taking and seizure of his property. (Doc. No. 1). Plaintiff also alleges that defendants engaged in a conspiracy to deprive him of his property. Id. Plaintiff seeks pain and suffering and punitive damages. (Doc. No. 1). On April 1, 2010, after the defendants filed motions to dismiss all claims, this court entered an Order dismissing the Fourth and Fifth Amendment claims, leaving only his claims for deprivation of substantive due process and civil §1983 conspiracy.

On June 26, 2012, defendants Cammerino *et al*. filed a motion for summary judgment, (Doc. No. 24), with an accompanying statement of facts, (Doc. No. 25). On June 31, 2012, defendants Cammerino *et al.* filed the brief in support of the motion for summary judgment, (Doc. No. 36). Also on June 31, 2012, defendant Waldron filed his own motion for summary judgment, (Doc. No. 33), supporting brief, (Doc. No. 34), and statement of facts, (Doc. No. 35). On September 14, 2012, the plaintiff filed his answers to the defendants' statements of facts (Doc. Nos. 41, 42) and a brief in opposition to defendants' motion for summary judgment, (Doc. No. 45). On September 24, 2012, defendant Waldron filed a reply brief, (Doc. No. 47), and on September 27, 2012, defendants Cammerino *et al*. filed a reply brief, (Doc.

No. 48).

## II. FACTUAL BACKGROUND

The plaintiff is the owner of property known as "Two River Junction" in Lackawaxen Township, Pike County, Pennsylvania. (Doc. No. 1 at ¶11). The property was destroyed by a fire on June 2, 2006, while it served as a retail establishment with basement living quarters. (Doc. No. 1 at ¶12, ¶13). In November 2006, the plaintiff was granted a Conditional Use Permit by Lackawaxen Township to restore the property to its original uses, albeit with an added second floor to serve as an office and living quarters. (Doc. No. 1 at ¶14).

The plaintiff, however, sought to revise his construction plans to create a separate living space for his father, as well as additional living space for a full-time live-in caregiver. (Id. at ¶19). The plaintiff reviewed these plans with building inspector Lee Hummel, who essentially said that since the plaintiff was approved for residential use, it should be fine to have his father live on the second floor. (Id. at ¶21; Doc. No. 33, Ex. A at 34). Mr. Hummel never gave anything to the plaintiff in writing that indicated he could deviate from the approved plans. (Doc. No. 33, Ex. A at 41). During this time, the plaintiff installed extra plumbing and electrical work on the second floor, an action which was not specifically approved by the township. (Id. at 55).

Needing extra revenue, the plaintiff then decided that he wanted to use

the second floor of his property as a bed and breakfast. (Doc. No. 1 at ¶20). The plaintiff submitted a conditional use application outlining his bed and breakfast plans, and the application was denied on June 19, 2007. (Id. at ¶22).

On October 9, 2007, the plaintiff received a Notice of Zoning Violation, issued by defendants Waldron and Cammerino, alleging that the plaintiff was violating a Lackawaxen Township Zoning Ordinance for constructing the second floor to be used as a bed and breakfast. (Id. at ¶23). This Notice demanded that all the partitions installed on the second floor, including plumbing and electrical fixtures, be removed within thirty (30) days. (Id. at ¶24). Shortly after, on November 15, 2007, the plaintiff received a Stop Work Order issued by defendant Waldron. (Id. at ¶25). The plaintiff appealed the Notice and disputed the validity of the Order. (Id. at ¶¶26-27; Doc. No. 41 at 5). An appeal hearing for the Notice was scheduled for December 13, 2007. (Doc. No. 1 at ¶26). This hearing was continued so that the parties could attempt to reach an agreement. (Doc. No. 33, Ex. A-2 at 57). During this time, the plaintiff had a "sense" that he was being conspired against by the defendants. (Doc. No. 33, Ex. A-1 at 112).

Beginning on December 11, 2007, the plaintiff's counsel and defendant Waldron exchanged a series of letters and telephone conversations attempting to resolve the issues with the property. (Doc. No. 33, Ex. A-2). On January 23, 2008, in a letter from the plaintiff's counsel to defendant Waldron,

it became clear that there was a lack of agreement over whether a permit was required to install a deck on the building. (Doc. No. 33 Ex. A-2 at 46). In letters exchanged on January 30, 2008 and January 31, 2008, it was further revealed that the plaintiff's attorney and defendant Waldron had different interpretations of a phone conversation, the result of which caused the plaintiff to forfeit his right to a timely hearing concerning the property. (Doc. No. 33, Ex. A-2 at 50-54). On February 15, 2008, defendant Waldron indicated that he planned to reschedule the hearings for early March and he also stated that he planned to file a complaint in the Court of Common Pleas of Pike County if the plaintiff did not stop construction. (Doc. No. 33, Ex. A-2 at 54).

While it is unclear if the plaintiff stopped construction, defendant Waldron filed a complaint seeking a preliminary injunction against further construction in the Court of Common Pleas of Pike County on February 21, 2008. (Id. at 56). Ultimately, as outlined in a March 19, 2008 letter from defendant Waldron, the complaint and preliminary injunction were withdrawn as part of a stipulated agreement. (Id. at 95). This agreement provided in relevant part that the Stop Work Orders would be lifted if the plaintiff agreed to submit revised building plans to address the previous violations. (Id.) Particularly, the plaintiff was not able to install a rear deck as part of the agreement. (Doc. No. 41 at 15). During this entire process, the plaintiff allegedly suffered from stress due to his financial and living situation. (Doc. No. 33, Ex. A-1 at 120). The plaintiff never sought medical attention and only

used "Yuengling and scotch" as his medication. (Id.)

On December 9, 2008, however, defendant Waldron filed another Notice of Violation when he believed that the plaintiff had constructed a second apartment on the second floor of the building. (Id. at 99). Defendant Waldron believed this because the plaintiff had added an additional wall, kitchen area, and exterior entrance. (Id.)

Ultimately, based upon the aforementioned facts, the plaintiff filed the instant action.

## III. SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the

matter but to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249; <u>see also</u> <u>Marino v. Indus. Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. <u>Andreoli v. Gates</u>, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." <u>In re Bressman</u>, 327 F.3d 229, 238 (3d Cir. 2003); <u>see also</u> <u>Celotex</u>, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. <u>Boyle v. County of Allegheny</u>, 139 F.3d 386, 393 (3d Cir. 1998) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts

immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

## IV. DISCUSSION

### A. The plaintiff has failed to demonstrate that he was deprived of his right to Substantive Due Process under the Fourteenth Amendment.

The plaintiff contends that the defendants violated his substantive due process rights by intentionally depriving him of the ability to repair and resume his business after the fire and flood damage for the purpose of driving him into bankruptcy. (Doc. No. 1 ¶¶31, 42). The defendants allegedly attempted to deprive him of his rights by acting arbitrarily, frivolously, and in bad faith through creating confusing agreements and raising dubious objections. (Id. at ¶¶32,34).

In order to prove a proper substantive due process claim in the context of a land-use dispute, the plaintiff must establish that "(1) he has a property interest protected by the Fourteenth Amendment and (2) he was deprived of that interest by local officials' behavior that shocks the conscience." Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008). The Third Circuit has held that "ownership is a property interest worthy of substantive due process protection." Id. *(citing* DeBlasio v. Zoning Bd. Of Adjustment for Twp. Of W. Amwell, 53 F.3d 592, 600 (3d Cir. 1995)). Since the core of due process is protection against arbitrary actions, only the most egregious official conduct is considered sufficiently arbitrary to shock the conscience. Chainey, 523 F.3d

at 219. There must be "an exact analysis of circumstances" before any abuse of power is condemned as conscience shocking. County of Sacramento v. Lewis, 523 U.S. 833, 850 (1998). The test of whether an action shocks the conscience is therefore fact specific and decided on a case-by-case basis. *See* United Artists Theatre Circuit, Inc. v. Township of Warrington, PA, 316 F.3d 392, 399-400 (3d Cir. 2003). Such a test, while fact specific, is also clearly designed to avoid "converting federal courts into super zoning tribunals." Eichenlaub v. Township of Indiana, 385 F.3d 274, 286 (3d Cir. 2004).

Mere negligence does not shock the conscience. Lewis, 523 U.S. at 849. To successfully shock the conscience and establish a constitutional violation, a land planning dispute must possess something akin to corruption, self-dealing, or bias of an ethnic group. *See* Eichenlaub, 385 F.3d at 286. As the Third Circuit has previously observed,

> [E]very appeal by a disappointed developer from an adverse ruling of the local planning board involves some claim of abuse of legal authority, but it is not enough to give these state law claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under section 1983.

Id. (*citing* United Artists, 316 F.3d at 402)(internal quotations omitted).

Under this high standard, even allegations that a township knowingly enforced an invalid zoning ordinance in bad faith would not rise to a level of conduct that shocks the conscience. Id. "A bad-faith violation of state law remains only a violation of state law." Id. (*citing* PFZ Properties, Inc. v.

9

Rodriguez, 928 F.2d 28, 32 (1st Cir. 1991). As long as there is a rational basis for a land use decision, the decision can not shock the conscience even if it is motivated by improper factors. Sameric Corp. of Delaware v. City of Philadelphia, 142 F.2d 582, 595-96 (3d Cir. 1998).

In this matter, the plaintiff has failed to set forth sufficient evidence that would enable a reasonable juror to find that the defendants' behavior shocked the conscience. While the plaintiff clearly has a protected property interest in the ownership of his building and he clearly had a difficult time obtaining permits for various aspects of his construction, such difficulty does not suggest that he was deprived of his constitutional right to due process.

The plaintiff has not put forward any evidence of corruption, self dealing, or ethnic bias. The plaintiff has also failed to provide any explicit evidence that any of the defendants intentionally planned to deprive him of his property. At worst, defendant Waldon's letters to the plaintiff's counsel concerning the Stop Work Orders were somewhat confusing and drawn out, but even viewing the evidence completely in favor of the plaintiff, they amount to mere bureaucratic difficulties which do not rise to the level of a constitutional violation. It is also notable that the plaintiff and the township agreed to settle most of their issues, an agreement which was outlined in the March 19, 2008 letter. This agreement seemed to satisfy the plaintiff when he claimed "I got everything I wanted to get[.]" (Doc. No. 33 Ex. A-1 at 71). Though the plaintiff was unable to install the wooden deck, he was still allowed to resume general

construction on his property which included the upstairs apartment walls. (Id. at 70-71). As part of the settlement, the contentious Stop Work Orders were lifted, a fact which indicates that the defendants' behavior is merely typical of a strict zoning board and therefore does not shock the conscience. While the plaintiff claimed that the defendants strove to drive him into bankruptcy, the plaintiff never actually declared bankruptcy. (Id. at 108). In the absence of any shocking evidence regarding the defendants' behavior, it is impossible to find that a reasonable juror could believe that the defendants' actions shocked the conscience.

Additionally, since the defendants presented sufficient evidence that a reasonable fact-finder must believe that they had a reasonable basis for their actions, their actions could not be shocking to the conscience. It is clear from the record that every action the defendants took was at least generally related to the reasonable goal of ensuring conformity with township zoning and building codes. While the plaintiff and the defendants clearly disagreed on particular aspects of the policies and whether or not the parties fulfilled their obligations, the dispute was always related to the goal of compliance with local zoning and building codes. As such, actions and behavior that are founded upon a reasonable basis can not be shocking to the conscience.

Since the plaintiff has failed to provide sufficient evidence that the defendants' conduct has shocked the conscience, summary judgment will be granted in favor of the defendants on the plaintiff's §1983 substantive due

process claims.

**B. The plaintiff has failed to provide sufficient material facts to maintain that he was a victim of a §1983 civil conspiracy.**

The plaintiff alleges in his Complaint that he was the victim of a conspiracy among the defendants to deprive him of his property rights. (Doc. No. 1, ¶36). To demonstrate conspiracy under §1983, the plaintiff must show "an actual abridgement of some federally-secured right." *See* Torres-Rosado v. Rotger-Sabat, 335 F.3d 1 (1st Cir. 2003)(*citing* Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001)("The fact that a plaintiff styles her claim as a conspiracy ... does not diminish her need to show a constitutional deprivation."); Earle v. Beniot, 850 F.2d 836, 844 (1st Cir. 1988)).

As outlined in section IV-A above, the court has found that there was no §1983 violation, and therefore there can be no §1983 conspiracy claim. Since plaintiff has failed to establish a §1983 violation and provide sufficient evidence to support a §1983 conspiracy claim, summary judgment will be granted in favor of the defendant.

**C. Pain and suffering damages are unavailable.**

Since there are no substantive claims remaining, damages are not available.

## IV. CONCLUSION

In light of the foregoing,[2] the defendants' motions for summary judgment will be **GRANTED**. (Doc. Nos. 24, 33). An appropriate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: August 5, 2013**

O:\Mannion\shared\MEMORANDA - DJ\2009 MEMORANDA\09-01964-01.wpd

---

[2]Since the plaintiff failed to provide sufficient evidence to survive summary judgment on its merits, the court need not address the issues of official capacity or qualified immunity.